UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY JUNIOR JACQUES,

    *Plaintiff*,

*v*.                                                                        CASE NO. 12-CV-12056

COMMISSIONER OF                         DISTRICT JUDGE DENISE PAGE HOOD
SOCIAL SECURITY,                          MAGISTRATE JUDGE CHARLES E. BINDER

    *Defendant.*
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

### I.  RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

### II.  REPORT

#### A.  Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs. 8, 11.)

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

Plaintiff Jerry Jacques was 46 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 6 at 26, 93, 96.) Plaintiff's employment history includes work as a carpenter for 26 years. (Tr. at 134.) Plaintiff filed the instant claims on January 10, 2008, alleging that he became unable to work on September 1, 1993. (Tr. at 93, 96.) The claims were denied at the initial administrative stages. (Tr. at 51, 52.) In denying Plaintiff's claims, the Commissioner considered substance abuse addiction – drug, muscle/ligament disorder, and fascia as possible bases for disability. (*Id.*) On March 15, 2010, Plaintiff appeared before Administrative Law Judge ("ALJ") Cynthia M. Buetthauer, who considered the application for benefits *de novo*. (Tr. at 14-25; 26-50.) In a decision dated April 27, 2010, the ALJ found that Plaintiff was not disabled. (Tr. at 23.) Plaintiff requested a review of this decision on May 22, 2010. (Tr. at 11-13.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on April 14, 2012, when, after review of additional exhibits[2] (Tr. at 205-08), the Appeals Council denied Plaintiff's request for review. (Tr. at 1-6.) On May 7, 2012, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative

---

[2]In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

*See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the disability insurance benefits ("DIB") program of Title II, 42 U.S.C. §§ 401 *et seq*., and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal

4

Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that [he] is precluded from performing [his] past relevant work[.]" *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth

5

step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.  ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since January 10, 2008, the application date. (Tr. at 19.) At step two, the ALJ found that Plaintiff's hypertension and history of alcohol addiction without any other coexisting mental impairment were medically determinable but were not "severe" within the meaning of the second sequential step. (Tr. at 19-23.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 23.)

### E.  Administrative Record

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff was "severely alcohol addicted"since 1988. (Tr. at 198.) Plaintiff was treated by Ronald Shaheen, D.O., from August 2007 through December 2008 for hypertension, weight gain, heartburn, and atypical chest pain. (Tr. at 153-58, 189-197, 200-04.) An EEG taken on January 21, 2008, was "normal." (Tr. at 197.) On January 21, 2008, Dr. Shaheen "strongly encouraged [Plaintiff] to discontinue smoking, discontinue any caffeine use. No alcohol. He is encouraged to diet, exercise, and lose weight." (Tr. at 192.)

A Physical Residual Functional Capacity ("RFC") Assessment was completed by Gary Lonik on March 10, 2008. (Tr. at 159-66.) There were no exertional, postural, manipulative, visual, communicative, or environmental limitations established. (Tr. at 160-63.)

Plaintiff was referred by Disability Determination Services to be examined by Walter R. Drwal, Ph.D., on March 10, 2008. (Tr. at 167-74.) Dr. Drwal concluded that "possible LD and Bipolar do not seem significant enough to prevent him from working a 40 hour week." (Tr. at 172.) Plaintiff was assessed a GAF score of 70 and Dr. Drwal noted that in the word memory test,

Plaintiff's "performance was so poor that normally a person can only do this poorly by deliberately deciding to perform badly." (*Id.*)

A Psychiatric Review Technique was completed by Ashok Kaul, M.D., on March 14, 2008. (Tr. at 175-88.) Dr. Kaul found that Plaintiff's mental impairment, substance abuse addiction disorder, i.e., alcohol dependence, was not severe. (Tr. at 175, 183.) Dr. Kaul concluded that Plaintiff was only mildly limited in all areas, i.e., activities of daily living, maintaining social functioning, and maintaining concentration, persistence or pace. (Tr. at 185.)

When asked on the Adult Function Report to describe what he does from the time he wakes up until going to bed, Plaintiff reported, "not a thing." (Tr. at 120.) At the administrative hearing, Plaintiff testified that he lives with his mother in her house. (Tr. at 31.) Plaintiff stated that he had a driver's license but it was revoked after a drunk driving conviction. (Tr. at 32.) Plaintiff indicated that he stopped working due to the fact that he "didn't show up" because he "would get really nervous[.]" (Tr. at 33.) When asked for more specifics, Plaintiff testified that physically he is "like [he's] out of breath all the time" and that he "[m]entally would go back to [his] childhood." (Tr. at 34.) Plaintiff added that he "drift[s] off and lose[s] attention," but that he has not pursued any mental health treatment because he does not "have the funds" and his entitlement program caseworker told him "there was nothing she could do for [him] or help [him]." (Tr. at 34-35.) Plaintiff stated that he never requested a referral to mental health service while he was seeing Dr. Shaheen and that he has not seen his doctor (or any other health service provider) since December of 2008. (Tr. at 35.)

Plaintiff indicated that he was still taking blood pressure medication and that he was never told by his doctor to cut down on salty foods, to watch his diet, or to exercise, despite notes by Dr. Shaheen that Plaintiff had been non-compliant in those areas. (Tr. at 36.) Plaintiff explained that Dr. Shaheen continues to prescribe his blood pressure medication even though he does not see Plaintiff. (*Id.*) Plaintiff stated that the last time he drank any alcohol was 14 months before the hearing and that he was not attending AA; he stopped going because he was "tired of it[.]" (Tr. at 37.) Plaintiff further stated that he followed his doctor's advice to cutting down on caffeine but did

7

not follow his advice regarding smoking and that he continued to smoke a pack of cigarettes a day. (Tr. at 37-38.) When asked how he pays for the cigarettes, Plaintiff indicated that his mother does. (Tr. at 38.) The ALJ noted that mental health services would cost less than the $50 per week cigarette cost. (*Id.*) Plaintiff also testified that he has chest pains and is "out of breath a lot" but "continues to smoke[.]" (Tr. at 38-39.) As to mental health issues, Plaintiff testified that he is "[a]nxious and depressed" and "do[es]n't like to be around people." (Tr. at 40.) Plaintiff also testified that he naps several times a day because he gets "wore out and tired, depressed." (Tr. at 45.)

Plaintiff testified that he can lift "over 20" pounds, that he watches television, cooks meals, vacuums, does dishes, does laundry, is able to take care of his personal hygiene needs, shops with his mom, goes fishing, goes out to eat, goes out to watch movies, spends time at his mother's cabin in Hale, Michigan, visits with his children, and visits with his friend. (Tr. at 41-45.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who "could sit for six to eight hours out of a day, stand and walk at leastsix hours out of the day . . . could lift and carry frequently up to 25 pounds, occasionally up to 50 pounds" and "is limited to jobs that are unskilled." (Tr. at 48.) The VE responded that such a person could perform the 13,000 warehouse worker, 80,000 janitorial and 11,000 dishwasher unskilled, medium-level jobs available in the State of Michigan. (*Id.*)

### F.   Analysis and Conclusions

#### 1.   Legal Standards

The ALJ found that Plaintiff did not have a severe impairment or combination of impairments. (Tr. at 20.) After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

#### 2.   Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 8.) As noted earlier, if the Commissioner's decision is supported by substantial evidence, the

8

decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff contends that the ALJ "erred as a matter of law in failing to properly evaluate the medical records of evidence, and, thereby, formed an inaccurate hypothetical that did not accurately portray Mr. Jacques' impairments." (Doc. 8 at 6.) Plaintiff argues that the ALJ failed to "incorporate the fact that claimant has uncontrolled blood pressure" into the hypothetical. (Doc. 8 at 6-7.) I first suggest that there is no indication that Plaintiff's blood pressure was "uncontrolled" as it continued to be controlled by medication prescribed by Dr. Shaheen even after Plaintiff could no longer afford to visit the doctor. (Tr. at 36, 153-58, 189-197, 200-04.)

I further suggest that substantial evidence supports the ALJ's findings. The ALJ thoughtfully considered Plaintiff's ability to do basic work activities, i.e., physical functions, capacities for seeing, hearing, and speaking, understanding, carrying out and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers, and usual work situations and dealing with changes in a routine work setting. (Tr. at 20-22.) In the physical RFC, there were no exertional, postural, manipulative, visual, communicative, or environmental limitations established. (Tr. at 160-63.) Plaintiff's treatment for hypertension consisted of prescription medication. As to psychological issues, there is no evidence that Plaintiff ever sought treatment for any issues, and the consultative examiner concluded that nothing would "prevent him from working a 40 hour week." (Tr. at 172.) Dr. Kaul found that Plaintiff's mental impairment and substance abuse addiction disorder, i.e., alcohol dependence, was not severe and that Plaintiff was only mildly limited in any area of function. (Tr. at 175, 183, 185.)

Plaintiff's lack of treatment for psychological issues and prescription medication treatment for hypertension reflect modest treatment that is inconsistent with a finding of disability. *See Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1001 (6th Cir. 2011); *Myatt v. Comm'r of Soc. Sec.*, 251 F. App'x 332, 334-35 (6th Cir. 2007).

9

Finally, I suggest that the hypothetical posed to the VE properly incorporated the limitations found in the RFC assessment and was in harmony with the objective record medical evidence and Plaintiff's own testimony that he watches television, cooks meals, vacuums, does dishes, does laundry, takes care of his personal hygiene needs, shops with his mom, goes fishing, goes out to eat, goes out to watch movies, spends time at his mother's cabin in Hale, Michigan, visits with his children, visits with his friend, and is able to lift "over 20" pounds. (Tr. at 41-45.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3.     Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III.     REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with

the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

                                                  s/ **Charles E Binder**
Dated: February 20, 2013                        CHARLES E. BINDER
                                                  United States Magistrate Judge

**CERTIFICATION**

    I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System.

Date:  February 20, 2013                      By     s/Patricia T. Morris
                                                         Law Clerk to Magistrate Judge Binder